UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RANDII K. SCOTT, MICHAEL T. SCOTT (AKA) MICHAEL T. QUIGLEY II,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY SOCIAL SERVICES, KIERAN DANNAN-JOYNER<br><br>Defendants. | 2:07-cv-01340-LRH-LRL<br><br>ORDER |

Presently before the court is Defendants Clark County Social Services ("Clark County") and Kieran Dannan-Joyner's ("Ms. Dannan-Joyner") Motion to Dismiss (#13[1]). Plaintiffs Randii Scott and Michael Scott, who is also known as Michael Quigley II ("Michael Scott"), filed a response (#16) to which Defendants replied (#17). Also before the court is Plaintiffs' "supplement" (#23). In response, Defendants filed a Motion to Strike (#24) and Plaintiffs responded (#25).

**I.    Facts and Procedural History**

Because the court considers this case on a motion to dismiss, the court accepts the

---
[1] Refers to the court's docket entry number

complaint's allegations as true.[2] *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).

Michael Scott, who is disabled, sustained brain injuries from being administered the wrong medication for two weeks while he was staying at a group home in California that he was placed in by child protective services. Randii Scott is Michael Scott's mother and caretaker. Due to Michael Scott's disability, he needs his mother's assistance with his daily activities.

In March of 2007, Michael Scott became eighteen years old. On July 19, 2007, Michael Scott moved from San Francisco, California, to Las Vegas, Nevada. After receiving two monthly rental vouchers, he applied for federal, state, and local government services.[3] Ms. Dannan-Joyner, a Clark County Social Services case worker, reviewed his application. Acknowledging that Michael Scott was no longer a minor, Ms. Dannan-Joyner informed him that he would no longer receive or be eligible for county services unless he "separated" from his mother,[4] that his mother could not be in the same room with Michael Scott when he interviewed, and during the interview his mother could not read, interpret, or communicate on his behalf.

Plaintiffs then filed this civil rights complaint against Clark County and Ms. Dannan-Joyner alleging the following claims for relief: (1) a violation of the Americans with Disabilities Act; and (2) pursuant to 42 U.S.C. § 1983, a violation of his Fourteenth Amendment right to a "happy, safe, and mobile life," and to equal protection of the laws. On June 12, 2009, Plaintiffs filed a

---

[2] Plaintiffs, in their opposition to Defendants' motion to dismiss, attached exhibits without supporting affidavits confirming the truth of the exhibits. "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citations omitted). Considering such evidence converts the motion to dismiss to a motion for summary judgment. *Id.* The two exceptions to that rule; that the documents are submitted as part of a complaint, or that the "plaintiff's complaint necessarily relies on [the exhibits]," are not applicable here. *Id.*

[3] In the complaint, Michael Scott does not identify the source of the rental vouchers.

[4] It is not clear what is meant by the term "separated." Michael Scott appears to allege both that Ms. Dannan-Joyner told him he must physically separate from his mother by moving out of her home and that she was going to separate his case from his mother's.

2

"supplement" (# 23) to their complaint apparently seeking to add a First Amendment retaliation claim to their complaint. Michael Scott and his mother appear pro se before the court.

## II. Discussion

### A. Federal Rule of Civil Procedure 12(b)(1)

Defendants first argue that Randii Scott lacks standing. Lack of standing is a defect in subject-matter jurisdiction and may properly be challenged under Rule 12(b)(1). *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Article III of the United States Constitution requires federal courts to adjudicate only actual cases and controversies. *Allen v. Wright*, 468 U.S. 737, 750 (1984). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* at 750-51 (*quoting Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Generally, "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Id.* at 752. "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted." *Warth*, 422 U.S. at 500.

In the complaint, Randii Scott does not allege that Defendants engaged in conduct that violated her rights or otherwise caused her injury. Thus, Randi Scott does not appear to be suing on her own behalf. Instead, she appears to bring the claims on behalf of Michael Scott in her alleged capacity as his legal guardian.

Pursuant to Federal Rule of Civil Procedure 17(c), a general guardian may sue or defend on behalf of a minor or an incompetent person. Fed. R. Civ. P. 17(c). However, Michael Scott turned eighteen (18) years old before Plaintiffs filed their complaint. Furthermore, there has been no showing that he is incompetent. Thus, Randii Scott has failed to allege the threshold requirements

3

necessary to bring claims on Michael Scott's behalf.[5]

## B. Federal Rule of Civil Procedure 12(b)(6)

Defendants also move to dismiss for failure to state a claim upon which relief can be granted, which is governed by Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal quotation marks omitted). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on its judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's

---

[5]Even if Randii Scott had standing to sue on her son's behalf, she would still need to obtain legal counsel to bring claims forward. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997). In *Johns*, a father represented his minor child pro se. The court held, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Id.* The policy for this is that "the choice to appear pro se is not a true choice for minors . . . [who] cannot determine their own actions . . . It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys." *Id.* (citations omitted).

4

liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

"In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt . . . a pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panaki v. Los Angeles Police Dept*, 839 F.2d 621, 623 (9th Cir. 1988) (internal quotation marks and citations omitted).

### 1.     Americans with Disabilities Act[6]

Defendants first move to dismiss Michael Scott's allegation that Defendants violated his rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213. Title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, "to state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) [he] is an individual with a disability; (2) [he] is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) [he] was either excluded from participation in or denied the benefits of the public entity's services, programs or activities . . . ; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

The parties do not dispute that Michael Scott is a disabled individual. In relevant part, the ADA defines disability as a physical or mental impairment that substantially limits one or more of

---

[6]Although Michael Scott does not aver any specific allegations against Clark County Social Services, "when a plaintiff brings a direct suit under . . . Title II of the ADA against a municipality (including a county), the public entity is liable for the various acts of its employees." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001). Under ADA, courts "apply the doctrine of respondeat superior to claims brought directly under the statute . . . ." *Id.*

5

the major life activities of such individual, for which "major life activities" include eating, reading, and communicating. 42 U.S.C. § 12102(2)(A). Michael Scott meets the disability requirements under 42 U.S.C. § 12102(1)(A) because he alleges that (1) he has a "brain impairment," and (2) he needs his mother's help with all of his daily activities, including cooking, transportation, interpretation, and communication.

However, Michael Scott neglects to allege that he is eligible or qualified to receive the county services or benefits he seeks. He alleges only that Ms. Dannan-Joyner has informed him that until he "separates" from his mother, he is *not* eligible to receive county services or benefits. From the face of the complaint, it is not possible to identify how Michael Scott is eligible for such benefits. Thus, Michael Scott's allegations are not sufficient to establish that he is qualified to receive the county benefits.

Furthermore, Michael Scott fails to allege that his alleged denial of benefits was "by reason of disability," as required by 42 U.S.C. § 12132. "[A] plaintiff proceeding under Title II of the ADA must . . . prove that the exclusion from participation in the program was based *solely* by reason of disability." *See Weinrich v. Los Angeles County Metrop. Transp.*, 114 F.3d 976, 979-80 (9th Cir. 1997) (emphasis added) (internal quotation marks and citations omitted) (holding that the defendant did not violate the ADA because the plaintiff's inability to obtain benefits was due to reasons other than discrimination).

Michael Scott fails to provide any factual allegations indicating Defendants discriminated against him because of his disability. Michael Scott himself has provided reasons for his ineligibility other than his disability, including the fact that he is no longer a minor. Rather than nonconclusory factual allegations, Michael Scott provides legal conclusions beginning with "I believe" to show Dannan-Joyner's discriminatory intent. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (holding that the Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action" will not suffice.)  Thus, Michael Scott insufficiently alleges the fourth required factor in his ADA claim.

In sum, while Michael Scott has shown that he is disabled, his complaint does not sufficiently aver the other elements required for an ADA claim.  He does not allege that he was denied benefits, and he does not provide any basis for his legal conclusion that Dannan-Joyner discriminated against him based on his disability.  Therefore, Michael Scott has not stated a claim under the ADA that would entitle him to legal relief, and the court will dismiss his ADA claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 2. 42 U.S.C. § 1983

Defendants also move to dismiss Michael Scott's 42 U.S.C. § 1983 claim against Ms. Dannan-Joyner.[7]  In the complaint, Michael Scott indicates he is suing Ms. Dannan-Joyner in her official capacity.  "Official-capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."  *Neason v. Clark County*, 352 F.Supp.2d 1133, 1146 (D.Nev. 2005) (internal quotation marks and citations omitted).  Therefore, "as long as the government entity receives notice and has an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Thus, in suing Ms. Dannan-Joyner in her official capacity, Michael Scott is essentially suing Clark County.

"A local government or entity may be sued under [42 U.S.C. §] 1983 where the alleged constitutional deprivation was inflicted pursuant to an official policy or custom."  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (internal quotation marks and citations omitted).  In the Ninth Circuit, "even if [a] complaint contains nothing more than a bare allegation that the individual [worker's] conduct conformed to official policy, custom, or practice, dismissal of a [42 U.S.C. §] 1983 complaint is improper."  *Id.* (internal quotation marks

---

[7]The court does not consider whether Defendants are entitled to qualified immunity.  "Qualified immunity is an affirmative defense that must be raised by a defendant."  *See Groten v. Calif.*, 251 F.3d 844 (9th Cir. 2001).  Since Defendants do not raise this defense, the court will not address it.

and citations omitted) (holding that, since the plaintiff did not allege the individual's conduct conformed to official policy, custom, or practice, the motion to dismiss her complaint was properly granted). Here, Michael Scott has not alleged that his rights were violated due to any policy, custom, or procedure enforced by the county. Accordingly, Michael Scott has failed to state a claim against Clark County and Ms. Dannan-Joyner in her official capacity.

Although Michael Scott has brought suit against Ms. Dannan-Joyner in her official capacity, even if he is attempting to bring a claim against Ms. Dannan-Joyner in her individual capacity, he has failed to state such a claim. "To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege the following: (1) that the conduct that harmed the plaintiff was committed under color of state law; and (2) the conduct violates a constitutional right." *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987) (citations omitted). The first factor, that Ms. Dannan-Joyner was working under color of state law, is undisputed, and only the second factor will be discussed here. Michael Scott appears to allege Ms. Dannan-Joyner violated both his right to substantive due process and equal protection of the laws. The court will address both claims below. In assessing this second factor, the court will first classify the rights allegedly violated and identify the classifications upon which Michael Scott's due process and equal protections are based. The court will then apply the appropriate scrutiny to these rights and classifications to determine whether Michael Scott has alleged a constitutional violation.

### i. Substantive Due Process

Michael Scott alleges Ms. Dannan-Joyner violated his right to a happy, safe, and mobile life. He also alleges that she has violated his basic right to property. Furthermore, he alleges that Ms. Dannan-Joyner's actions are infringing upon his right to live with his mother. The court will address each subset of rights in turn.

### a. Right to a Happy, Safe, and Mobile Life

Michael Scott does not have a fundamental or legally recognized right to a happy, safe, and

mobile life under the Due Process Clause of the Fourteenth Amendment.[8]  "The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dept of Soc. Services*, 489 U.S. 189, 195 (1989).  The Fourteenth Amendment does not require the states to provide citizens with minimum levels of safety or happiness.  Thus, happiness, safety, and mobility are not rights that have been recognized as fundamental under the Fourteenth Amendment.

### b. Right to Property

Michael Scott seeks continued monthly rental assistance and medical assistance while his medicaid is pending in Nevada.  He appears to allege the denial of this assistance violates property rights he has in the benefits.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  As previously discussed, Michael Scott has not alleged that he is qualified for the benefits he seeks or that he has a legitimate entitlement to such benefits.  Additionally, "welfare benefits are not a fundamental right, and neither State nor Federal Government is under any sort of obligation to guarantee minimal levels of support." *Lavine v. Milne*, 424 U.S. 577, 585 n.9 (1976) (*citing Dandridge v. Williams*, 397 U.S. 471 (1970)).  Since Michael Scott has not alleged how he is entitled to the benefits he seeks, and he does not have a fundamental right to them, Michael Scott has not stated a legally cognizable claim for a violation of a right to property.

### c. Right to Familial Relationship

Michael Scott alleges that Ms. Dannan-Joyner is "trying to segregate [him] from his mother who is [his] legal guardian and caretaker." (Compl. (#1), at 4.)  Although the court is unsure as to whether Ms. Dannan-Joyner was attempting to physically separate Michael Scott from his mother

---

[8]While there is a fundamental right to travel, Michael Scott does not use "mobile" in the context of traveling.  Rather, his only allegation regarding mobility is that he needs his mother's help with his daily activities, including transportation. (Compl. (#1), at 4.)

or Michael Scott's case from his mother's case, the court will view Michael Scott's allegations in the most favorable light to him and treat his allegation as one which addresses the fundamental right to a familial relationship.

Although "a fundamental right to be free from state intrusion in decisions concerning family relationships in the nuclear family has been clearly recognized," *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1311 (9th Cir. 1982), "the government generally is under no obligation to facilitate or fund the exercise of constitutional rights." *Lipscomb By & Through DeFehr v. Simmons* 962 F.2d 1374, 1379 (9th Cir. 1992); *see also Lyng v. Castillo*, 477 U.S. 635, 638 (1986); *DeShaney*, 489 U.S. at 195.

In *Lipscomb*, the Ninth Circuit examined an Oregon statute that only provided governmental aid to foster children who were placed with non-relative foster parents. *Lipscomb*, 962 F.2d at 1376. The plaintiffs in *Lipscomb* argued that this classification scheme impinged upon their constitutional right to live with extended family members. *Id.* at 1368. Although the court recognized the fundamental right to a family relationship, the court found, "the barrier to plaintiffs' exercise of any fundamental right is that their relatives either lack or are unwilling to spend the money to take care of them." *Id.* at 1379. Thus, "because [the government had] no affirmative obligation to fund plaintiff's exercise of a right to maintain family relationships free from governmental interference, [the court] declined to apply heightened scrutiny and consider[ed] only whether [the] classification [was] rationally related to a legitimate state interest." *Id.*

In *Lyng*, the United States Supreme Court evaluated a classification in which eligibility and benefit levels for food stamps were determined on a household, rather than an individual, basis. *Lyng*, 477 U.S. at 636. The definition of "household" included parents and siblings, but generally not more distant relatives. *Id.* The Court found that "the statutory classification [did not] directly and substantially interfere with family living arrangements and thereby [did not] burden a fundamental right." *Id.* (internal quotation marks and citations omitted). Because "it [was]

10

exceedingly unlikely that close relatives would choose to live apart simply to increase their allotment of food stamps, for the cost of separate housing would almost certainly exceed the incremental value of the additional food stamps," the court found that the classification did not order families to live or dine separately, and therefore found that it did not impinge on a fundamental right. *Id.* at 638-39.

Here, Michael Scott does not allege that Clark County is requiring him to separate from his mother. Instead, he alleges that he "would no longer receive or be eligible for county services unless [he] agreed to be separated from his mother." (Compl. (#1), at 3.) Thus, Michael Scott's situation resembles those in *Lipscomb* and *Lyng*, where the government action at issue is the denial of a benefit based on his familial relationship.

Like the foster children in *Lipscomb*, if Michael Scott's barrier to living with his mother is his mother's inability or unwillingness to provide for him, then Ms. Dannan-Joyner "has no affirmative obligation to fund [his] exercise of a right to maintain family relationships free from governmental interference." *See Lipscomb*, 962 F.2d at 1376. Additionally, Michael Scott does not allege that his financial benefits will be decreased if his case is separated from his mother's, nor does he allege that he will move away from his mother if he is denied benefits. In these regards, his situation resembles that of the plaintiffs in *Lyng*, in which the Court held that a governmental action that does not order the plaintiffs to live apart does not impinge on a fundamental right. *See Lyng*, 477 U.S. at 638-39. In sum, while Michael Scott has a fundamental right to live with his mother if he chooses, he does not have a fundamental right to governmental aid enabling him to do so.

### ii.     Equal Protection

Michael Scott also alleges that Ms. Dannan-Joyner violated his right to equal protection of the laws. In particular, Michael Scott appears to allege Ms. Dannan-Joyner denied his benefits or treated him differently because of his disability and his age. "To state a claim under 42 U.S.C. §

11

1983 for a violation of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee*, 250 F.3d at 686.

With regard to Michael Scott's disability-based claim, the disabled "are not a protected class for purposes of equal protection under the Fourteenth Amendment." *Gamble v. Escondido*, 104 F.3d 300, 307 (9th Cir. 1996) (*citing City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446 (1985)); *see also Lee*, 250 F.3d at 686 (holding, "the disabled do not constitute a suspect class for equal protection purposes."); *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (applying a rational basis test to a Government Act because the disabled do not constitute a suspect class).

As to Michael Scott's age-based discrimination claim, Ms. Dannan-Joyner's interaction with Michael Scott began with her acknowledgment of his age. However, age is not a suspect class because it does not conform to the typical definition of a suspect class as one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness . . . ." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976) (holding that those over the age of 50 did not constitute a suspect class and that the aged "have not experienced a history of purposeful unequal treatment . . . ."); *see also Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991) (applying the rational basis test to a claim of age discrimination because "[the Supreme Court] has repeatedly said that age is not a suspect classification under the equal protection clause.").

### iii.     Rational Basis Standard of Review

To summarize, the court has found that the rights Michael Scott alleges Ms. Dannan-Joyner violated are not fundamental. Similarly, the court has found Michael Scott is not a member of a protected class. "A classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity and must be upheld if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."

*Aleman v. Glickman*, 217 F.3d 1191, 1203 (9th Cir. 2000) (internal quotation marks and citations omitted). Thus, since Michael Scott has not alleged a fundamental right or membership in a protected class, Ms. Dannan-Joyner's actions need only be rationally related to a legitimate state interest. In applying the rational basis test, the court does "not require that the government's action actually advance its stated purposes, but merely look[s] to see whether the government *could* have had a legitimate reason for acting the way it did." *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1050 (9th Cir. 2000). (emphasis in original) (citations omitted).

Withholding government funds from some so as to provide for others is a legitimate state interest. For example, in *Lipscomb*, the Ninth Circuit found that the state, in excluding foster parents that were related to the adopted child from receiving state funding, "simply [did] not have enough money to pay for every child needing foster care." *Lipscomb*, 962 F.2d at 1380. Thus, the court found that the choice to exclude some families so more funds would be available for others bore "a rational relationship to the legitimate purpose of maximizing the level of benefits available to all the children in the foster care program." *Id.* Additionally, in *Lyng*, the Supreme Court examined a definition of "household" for purposes of disbursing food stamps that would disqualify certain people from receiving benefits. *Lyng*, 485 U.S. at 360. In upholding the definition, the Court noted, "protecting the fiscal integrity of Government programs, and of the Government as a whole, is a legitimate concern of the State." *Id.* at 373. The Court also stated that their "review of distinctions Congress draws in order to make allocations from a finite pool of resources must be deferential . . . ." *Id.*

Here, in Ms. Dannan-Joyner's interactions with Michael Scott, she acknowledged that he was no longer a minor before requiring that he separate from his mother to be eligible for benefits. Because he was no longer a minor, Ms. Dannan-Joyner needed to assess Michael Scott's financial situation separately from his mother's to determine his eligibility for monetary county benefits.

Conducting a review of an adult's claim for benefits is a legitimate means of determining the adult's eligibility for such benefits, and a government agency is entitled to independently review adult applications for aid to ensure the appropriate allocation of the government's resources. Because the government's conduct at issue here is rationally related to a legitimate purpose, Michael Scott has failed to state a claim for the violation of his Fourteenth Amendment rights to substantive due process or equal protection.

### 3. First Amendment Retaliation

On June 12, 2009, Plaintiffs filed a "supplement" to their complaint. Federal Rule of Civil Procedure 7(a) lists the allowed pleadings, and "supplements" are not mentioned under Rule 7(a). However, since Plaintiffs are pro se, the court will treat their "supplement" as a motion to amend their complaint.

Rule 15(a) provides that a party may amend a pleading once "as a matter of course" before a responsive pleading is served. Fed. R. Civ. P. 15(a). If a responsive pleading has been filed, the "party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a)(2). Since this amendment occurs after Defendants' responsive pleadings have been filed, the court will consider it under the standard enumerated in Rule 15(a)(2). Despite the "extreme liberality" courts should apply in granting an amendment, *DCD Program*, 833 F.2d at 186, the Ninth Circuit has enumerated five factors the courts should consider in deciding whether to grant of leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

Here, Plaintiffs' amendment appears to be futile. "A proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim for defense." *Doe v. Nevada*, 356 F.Supp.2d 1123, 1125 (D. Nev. 2004). "As denying a plaintiff's motion to amend due to the futility of the proposed amendment has the effect

14

of granting a motion to dismiss the plaintiff's proposed claim, [the court] construes all pleaded facts in the complaint as true and draws all inferences in favor of the plaintiff." *Id.* Accordingly, the court will take the Plaintiffs' nonconclusory allegations in the amendment as true.

Randii Scott alleges that Clark County denied her temporary medical benefits in retaliation to her filing her current lawsuit. To prevail in a retaliation case, "a plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a substantial or motivating factor in the defendant's decision." *Soranno's Gas Co., Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Here, Randii Scott merely states the legal elements of the claim in a conclusory way without alleging any facts. Because Randii Scott does not allege any facts supporting her conclusion that her pending lawsuit is the reason she is being denied medical benefits, she does not sufficiently allege the necessary facts to assert a First Amendment retaliation claim. *See Ashcroft*, 129 S. Ct. at 1949 (holding the Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.) Therefore, the amendment is futile and the court will not grant it.

### III. Conclusion

In sum, Randii Scott lacks standing under Rule 12(b)(1) because she has not met the requirements to bring claims on Michael Scott's behalf. Furthermore, Michael Scott has failed to sufficiently allege a claim for legal relief under the ADA because he has not stated how he is entitled to benefits or that the alleged denial was solely caused by his disability. In addition, Michael Scott fails to sufficiently allege a claim for legal relief under the Fourteenth Amendment and 42 U.S.C. § 1983 because he does not provide any constitutional rights which have been violated.

///

///

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (#13) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (#24) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiffs are granted 30 days to file an amended complaint. In the event Plaintiffs fail to do so, this case shall be dismissed without prejudice, and the Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 7th day of July 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE